# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 16-22668-CIV-ALTONAGA/GOODMAN
### (CASE NO. 07-20714-CR-ALTONAGA)

RENE GONZALEZ PEREZ,

     Petitioner,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT AND RECOMMENDATIONS
## RECOMMENDING DENIAL OF § 2255 MOTION

Movant Rene Gonzalez Perez filed a motion to correct his sentence under 28 U.S.C. § 2255. [ECF No. 1]. Perez claims that his § 924(c) conviction -- for conspiracy and attempt to commit Hobbs Act robbery -- is no longer lawful after *Johnson v. United States*, 135 S. Ct. 2551 (2015). The United States filed a response in opposition before and after the Eleventh Circuit Court of Appeals granted leave to Perez to file a successive habeas motion. [ECF Nos. 5; 16; 20]. Perez filed a reply to both responses. [ECF Nos. 6; 23].[1] United States District Judge Cecilia M. Altonaga referred the § 2255 motion to the Undersigned. [ECF No. 19].

_____

[1]     Perez also filed a "Notice of Supplemental Authority" on November 17, 2017, attaching a copy of the oral argument transcript in *Sessions v. Dimaya*, No. 15-1498, 2017 WL 4517130 (Oct. 2, 2017). [ECF No. 22].

As explained below, the Eleventh Circuit has since held that § 924(c)'s "residual clause" is not unconstitutionally vague. *Ovalles v. United States*, 905 F.3d 1231, 1253 (11th Cir. 2018). Accordingly, because *Johnson* does not create a new constitutional rule as it relates to Perez's conviction under § 924(c), his claim is procedurally barred as untimely. Perez's petition also fails on the merits because the predicate offenses for his § 924(c) conviction -- conspiracy and attempted Hobbs Act robbery -- are crimes of violence under § 924(c). Upon careful consideration, the Undersigned **respectfully recommends** that the District Court **deny** Movant's habeas motion but **grant** the issuance of a certificate of appealability.

### I.      Factual and Procedural Background

#### a.   Criminal Case

This case involves Perez and his co-defendants' conspiracy and attempt to rob a check-cashing store and a fictional stash house. *United States v. Perez*, 661 F.3d 568, 572–73 (11th Cir. 2011). On direct appeal of his conviction, the Eleventh Circuit described the facts as follows:

> In late July 2007, a confidential informant (the "CI") for a joint state/federal task force discussed potential robbery targets with Onel Salgado, including a check-cashing store in Ft. Pierce and a fictional cocaine stash house in Miami. . . .
>
> Following this conversation, Salgado solicited appellant Perez for assistance in robbing the check-cashing store. On August 2, 2007, Salgado introduced Perez to the CI, and Perez stated his desire to take part in the Ft. Pierce heist. Citing his criminal expertise, Perez then began to direct the robbery's planning. Specifically, Perez insisted that he work with a

2

particular partner, later revealed to be appellant Del Monte. Due to the CI's task force handlers' concerns about potential injuries that could result from an attempted robbery of the store, the CI also encouraged Salgado to consider robbing the fictional cocaine stash house. Salgado wished to conduct both robberies, but he put the stash house robbery on hold when a potential conspirator refused to take part. With the cooperation of Perez and Del Monte, however, planning for the robbery of the check-cashing store continued.

On August 16, 2007, as the planned date for the check-cashing robbery neared, the task force received judicial authorization to intercept telephonic communications of Salgado and Perez. In a series of intercepted calls, Perez, Del Monte, Salgado, and the CI finalized their plans for the heist. The CI would park his car near the check-cashing store. As the owner left the store with a large sum of money, the CI would point him out to Perez and Del Monte; Salgado, driving the getaway car, would be parked nearby. Perez and Del Monte would then assault the owner, seize the cash, and flee the scene in Salgado's car.

The following morning, the CI, Perez, Del Monte, and Salgado met in a Miami shopping mall parking lot to put their plan into action. Perez and Del Monte then purchased pepper spray from a nearby gun shop, which they intended to douse the store owner with during the robbery. Afterwards, Perez, Del Monte, Salgado, and the CI drove towards Ft. Pierce in two cars to complete the robbery. The CI's task force handlers, concerned about injuries that could occur during the robbery, instructed the CI to abandon the scheme. Therefore, prior to their arrival at the store, the CI told his coconspirators that a contact had informed him that a large number of police had arrived at the store to break up a fight. Though Perez and Del Monte argued that the robbery should still go forward in some form, the parties ultimately decided to return to Miami.

On the car ride back from the aborted check-cashing store robbery, Salgado told Perez and Del Monte about the potential cocaine stash house robbery. The hold-up would be made possible by the cooperation of a disloyal drug courier "Juan," who was actually an undercover Miami–Dade detective. "Juan" would receive the location of the stash house after collecting his bimonthly delivery of twenty to thirty kilograms of cocaine from the Tamiami Airport. He would then convey this information to the CI, allowing Salgado and his coconspirators to steal the drugs from armed

3

guards brought to the stash house from Mexico. Perez and Del Monte embraced the proposal, adding that although more than three intruders would be needed, they "had the people for that."

Preparations for the robbery moved quickly. On August 21, 2007, the CI, Salgado, and "Juan" met to discuss their progress. Salgado reported that Perez and Del Monte wanted to overpower and immobilize the stash house guards shortly after they learned the stash house's location. They would then relieve "Juan" of the cocaine upon his arrival. "Juan" agreed with the plan and advised Salgado that the next shipment would arrive two days later, on August 23, 2007. Immediately following this meeting, Salgado called Perez to inform him of the shipment's arrival. Perez stated that he would "call the guys" and subsequently contacted appellants Fernandez and Davila. The next evening, Salgado called Perez to confirm that the cocaine would arrive the following afternoon. Perez then called an unidentified male to locate firearms for "work" the next day.

In the early afternoon of August 23rd, the day of the planned robbery, Salgado, Perez, Fernandez, Del Monte, and Pereier met at Perez's apartment to discuss the heist; though Davila was not present, he and Fernandez exchanged three phone calls during this time. Perez stressed the importance of completing the robbery that night, as the next cocaine shipment would not arrive for another twenty days. While the robbery crew all expressed their willingness to go forward, they also wished to meet "Juan" beforehand. Therefore, Salgado, Del Monte, and Fernandez left Perez's apartment, picked up the CI at a nearby restaurant, and returned.

At Perez's apartment, the CI apologized for "Juan's" absence and recounted the robbery's details. In particular, the conspirators discussed the need to be armed given the near certainty that the show of deadly force would be necessary to succeed. For example, Fernandez described how the Mexican guards would "kill you" to protect the drugs. Perez asked Fernandez if Davila would supply the necessary weapons. Fernandez replied that Davila had "four weapons and a shotgun," including a machine gun, and stated that they would need five hoods and plastic handcuffs. Perez noted that the machine gun would intimidate the guards. Because the transportation of guns would increase their risk of detection, they decided that the firearms would be transported in a separate vehicle. If police stopped that vehicle, the other car would create a distraction to allow it to escape.

4

After the CI stated that "Juan" would contact him within an hour, Fernandez and Davila exchanged two telephone calls; Davila arrived shortly thereafter. When the CI announced that he received "Juan's" call, Perez and his nephew placed a long firearm and a handgun into a black bag. Davila, Fernandez, and the CI carried this bag from the apartment and placed it in the rear of the CI's car. Davila took additional firearms from his car and put them in the CI's vehicle.

At this point, Salgado, Perez, Del Monte, Fernandez, Davila, and Pereier entered Perez's SUV and began following the CI to the pre-robbery rendezvous with "Juan." Throughout the 30 to 40–minute journey, Del Monte, Fernandez, and Davila phoned the CI to discuss the plan. Task force enforcement officers stopped the robbery crew's car just short of its destination under the pretext of controlling traffic around a vehicular accident. The officers searched the car and found Del Monte in possession of five knit stocking caps and pepper spray; Perez and Davila both possessed knives. A search of the CI's vehicle uncovered five loaded firearms: a .12 gauge shotgun, an AK–47 rifle, a .38 caliber revolver, a .9mm Berretta, and a .44 magnum.

*Perez*, 661 F.3d at 574–76.

On June 3, 2008, Perez was charged by Superseding Indictment, along with his codefendants, with the following offenses related to the check-cashing store robbery: **Count 1**: conspiracy to commit Hobbs Act robbery and **Count 2**: attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). [CRDE No. 176].[2]

In connection with the stash house robbery, Perez was charged with: **Count 3**: conspiracy to possess with intent to distribute cocaine; **Count 4**: attempt to possess with intent to distribute cocaine; **Count 5**: conspiracy to commit Hobbs Act robbery in

---

[2]    References to the docket in the underlying criminal case will be to "CRDE" and references to the instant civil § 2255 habeas case will be to "ECF."

violation of 18 U.S.C. § 1951(a), "in that the defendants did plan to take cocaine from individuals they believed to be engaged in narcotics trafficking by means of actual and threatened force, violence and fear of injury to said persons"; **Count 6**: attempted Hobbs Act robbery in that the defendants attempted to "take cocaine from individuals they believed to be engaged in narcotics trafficking by means of actual and threatened force, violence and fear of injury to said persons"; and **Count 7**: carrying and possessing a firearm during and in relation to a crime of violence and a drug-trafficking crime, as set forth in Counts 3, 4, 5, and 6 of the Superseding Indictment, in violation of 18 U.S.C. § 924(c)(1)(A) and 2. [CRDE No. 176].

Count 7 further alleged that "said firearm was: (a) a 9mm Beretta semi-automatic pistol; (b) a Sturm Ruger Redhaw .44 magnum revolver; (c) a Taurus SA .38 caliber revolver; (d) a Hatsan Arms Company 12 gauge pump shotgun; and (e) a Norinco SKS 7.62 rifle, with bayonet." [CRDE No. 176, p. 7].

Perez proceeded to a jury trial and was found guilty of Counts 1, 5, 6, and 7, and he was acquitted of Counts 2, 3, and 4. [CRDE No. 525]. Perez was sentenced to 80-months imprisonment and three years of supervised release for Counts 1, 5, and 6. [CRDE No. 600]. For Count 7, he was sentenced to 60-months imprisonment and five years of supervised release, to run consecutive to his term imposed for Counts 1, 5, and 6. [CRDE No. 600].

On direct appeal, the Eleventh Circuit affirmed his conviction but remanded for

6

resentencing on two occasions, and his sentence was ultimately reduced to 131 months.[3]

### b. Habeas Proceedings

Perez filed his initial motion seeking relief pursuant to 28 U.S.C. § 2255 on December 15, 2014, raising three claims: "(1) ineffective assistance of counsel at trial and sentencing; (2) violation of the Fourth Amendment due to the government's installation of a global positioning system ('GPS') device on Petitioner's vehicle without a warrant during the investigation phase of the case; and (3) denial of due process. . . ." *Perez v. United States*, U.S. District Court for the Southern District of Florida, Case No. 14-CV-24721-CMA, ECF No. 16, p. 2. The District Court denied Perez's petition and denied a Certificate of Appealability ("COA"). *Id.*

Petitioner filed a notice of appeal and motion for a COA. *Id.* at ECF No. 18. While that appeal was pending, Perez filed an application for leave to file a second or successive motion based on *Johnson*. [ECF No. 1]. The Eleventh Circuit denied the application as premature because Perez's initial habeas motion was still pending. [ECF No. 15]. This

---

[3]     On appeal, the Eleventh Circuit remanded the case for resentencing because the record did not document that Perez had been provided a chance to be heard. [CRDE No. 726]. The Court held a new sentencing hearing, allowing Perez to speak, and lowered his sentence to 131 months. [CRDE Nos. 729; 730; 735]. After that sentencing, Perez appealed his sentence again. The Eleventh Circuit again remanded for a new sentencing hearing, finding that the Government had not produced sufficient evidence to demonstrate that pepper spray was a dangerous weapon. [CRDE No. 757]. Perez was resentenced to the same 131-month sentence. [CRDE Nos. 764-66]. Perez appealed again, but his appeal was denied on June 5, 2014. [CRDE No. 782]. The United States Supreme Court denied Perez's Writ of Certiorari on November 5, 2014. [CRDE No. 784].

action was stayed pending the Eleventh Circuit's grant of leave to file a second or successive petition, which was granted on December 14, 2016. [ECF Nos. 12; 16].

## II.    Legal Standard and Analysis

Perez argues that the residual clause of § 924(c) is unconstitutionally vague in light of the holding in *Johnson* that a similarly-worded residual clause of the Armed Career Criminal Act ("ACCA") is unconstitutionally vague. [ECF No. 1]. He also argues that the underlying offenses for his § 924(c) conviction -- Count 5 (conspiracy to commit Hobbs Act robbery) and Count 6 (attempted Hobbs Act robbery) do not satisfy the elements clause of 924(c)(3)(A). [ECF No. 1]. Thus, he argues that his conviction and consecutive sentence under § 924(c) are unconstitutional and must be vacated. [ECF No. 1].

As explained below, because *Johnson* does not create a new constitutional rule as it relates to Perez's conviction under § 924(c), his claim is procedurally barred as untimely. Perez's petition also fails on the merits because the predicate offenses for his § 924(c) conviction -- conspiracy and attempted Hobbs Act robbery -- are crimes of violence under § 924(c). Specifically, Perez's attempted Hobbs Act robbery offenses satisfies the "elements clause" of § 924(c). And furthermore, his conspiracy to commit Hobbs Act robbery offense also satisfies the residual clause, applying a conduct-based approach.

Under § 924(c), a defendant "who, during and in relation to any ***crime of violence*** . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a

firearm," will receive an additional sentence of imprisonment of at least five years on top of the sentence for the underlying crime of violence. 18 U.S.C. § 924(c)(1)(A) (emphasis added). An offense is a *crime of violence* under § 924(c) if it is a felony and meets one of two definitions:

> **(A)** has as an element the use, attempted use, or threatened use of physical force against the person or property of another **[referred to as the "use-of-force clause" or "elements clause"]**, or

> **(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense **[referred to as the "risk-of-force clause" or "residual clause"]**.

*United States v. St. Hubert*, 909 F.3d 335, 344 (11th Cir. 2018) (citing 18 U.S.C. § 924(c)(3)(A) and (B)).

Under the ACCA, "a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a 'violent felony,'" defined under the residual clause as "any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Johnson*, 135 S. Ct. at 2555 (citing 18 U.S.C. § 924(e)(2)(B)). In 2015, the Supreme Court held in *Johnson* that the residual clause of the ACCA is unconstitutionally vague. *Johnson*, 135 S. Ct. at 2557-58, 2563. *Johnson* was then made retroactively available to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). And in *Dimaya*, the Supreme Court invalidated a similarly-worded residual clause. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018).

After the *Johnson* and *Dimaya* decisions, defendants like Perez, who were convicted

and sentenced of using a firearm in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A), moved for habeas relief, claiming that the residual clause of § 924(c)(1)(A) is similarly unconstitutionally vague. [*See* ECF No. 1].

However, after Perez filed his habeas petition, the Eleventh Circuit, in *Ovalles v. United States*, 861 F.3d 1257 (11th Cir. 2017) and *Ovalles v. United States*, 905 F.3d 1231 (11th Cir. 2018) ("*Ovalles II*"), rejected a vagueness challenge to § 924(c)(3)(b). *St. Hubert*, 909 F.3d at 344. Specifically, the Court in *Ovalles II* found that the residual clause of § 924(c) is not unconstitutionally vague if interpreted to embody a conduct-based approach, which focuses on the "real-world facts of the defendant's offense." *Ovalles II*, 905 F.3d at 1233, 1253. Thus, "*Johnson* and *Dimaya* leave section 924(c)(3)(B) unscathed" and do not provide "any 'rule of constitutional law'—'new' or old, 'retroactive' or nonretroactive, 'previously unavailable' or otherwise—that can support a vagueness-based challenge to the residual clause of section 924(c)." *In re Garrett*, 908 F.3d 686, 689 (11th Cir. 2018).

### a.   Perez's Claim is Procedurally Barred.

A motion to vacate under § 2255 is not a substitute for a direct appeal, and issues which could have been, but were not raised on direct appeal, are procedurally barred. *See Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998).

Under § 2255(f), a movant has a one-year period of limitations to bring a habeas petition, which runs from the date a conviction becomes final or "the date on which the

right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f).

However, a movant may overcome this procedural bar if he can show (1) "cause" for not raising the ground on direct appeal and (2) "actual prejudice" from the alleged error. *See Lynn*, 365 F.3d at 1234; *see also Bousley*, 523 U.S. at 622. Perez claims that his claim is timely under § 2255(f)(3) because, in declaring the ACCA's residual clause unconstitutionally vague, *Johnson* recognized a new right. [ECF No. 1, p. 16]. Thus, he states his June 26, 2016 motion is timely because he sought relief within one year from the date *Johnson* was decided -- June 26, 2016. [ECF No. 1, p. 16]. Perez further argues that his claim rests on a novel, newly-established holding and therefore he could not have made this argument before the *Johnson* decision. [ECF No. 21, p. 1].

But even if that were true, after *Ovalles* and *Ovalles II*, the residual clause of § 924(c)(3)(B) remains "unscathed," and *Johnson* does not create a new constitutional principle that applies to Perez's case. *See Garrett*, 908 F.3d at 689. Thus, Perez's claim is procedurally barred.

Finally, Perez cannot overcome this procedural bar by establishing "actual innocence" because he was not convicted under a constitutionally invalid provision of a statute, nor has he presented evidence undermining the Undersigned's confidence in the outcome of the trial. *See High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000) (citation omitted)

("If the petitioner cannot show cause, his failure to raise the claim in an earlier petition may nonetheless be excused if he can show that 'a fundamental miscarriage of justice would result from a failure to entertain the claim.'"); *see also Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) ("[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice . . . where a constitutional violation results in the conviction of someone who is actually innocent.").

Perez files this second habeas petition, with permission from the Eleventh Circuit, under § 2255(h). [ECF No. 16]. Section 2255(h) allows the filing of a successive habeas petition if it contains "newly discovered evidence" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). Where the Eleventh Circuit "authorizes a federal prisoner to file a successive § 2255 motion in the district court, that authorization is a threshold determination and narrowly circumscribed." *Solomon v. United States*, 911 F.3d 1356, 1360 (11th Cir. 2019). "[I]f the motion does not meet the § 2255(h) requirements [i.e., is not based on a new rule of constitutional law], the court lacks jurisdiction to decide whether the motion has any merit." *Id.* at 1361 (citation omitted).

Thus, a successive § 2255 motion that is based on an argument that the residual clause of § 924(c) is unconstitutionally vague after *Johnson* and *Dimaya* fails to meet the statutory requirements of § 2255(h). *See id.* at 1360 ("Relying on *Ovalles II*, this Court has

since held that a federal prisoner's proposed vagueness challenge to § 924(c)(3)(B)'s residual clause under *Johnson* and *Dimaya* could not satisfy the statutory requirements of § 2255(h)."); *see also Garrett*, 908 F.3d at 689 ("Under *Ovalles*, it is abundantly clear that neither Garrett nor any other federal prisoner sentenced under section 924(c) can argue that *Johnson* or *Dimaya* gives him the right to file a second or successive motion in this Circuit.").

> **b. Perez's Claim Also Fails on the Merits Because His Predicate Offenses Satisfy Both the Elements Clause and Residual Clause of § 924(c).**

Perez's § 924(c) conviction was predicated on two offenses relating to the conspiracy and attempt to rob the fictional stash house (for which a jury found him guilty) -- Count 5: conspiracy to commit Hobbs Act robbery and Count 6: attempted Hobbs Act robbery. [CRDE No. 176].

As noted by the Eleventh Circuit when it granted Perez leave to file this successive petition, it is unclear which predicate offense, conspiracy to commit Hobbs Act robbery and/or attempt to commit Hobbs Act robbery, the jury based its § 924(c) conviction on, because the jury rendered a general verdict of guilty. [ECF No. 16, p. 9]; [CRDE No. 525]. And at the time Perez filed this petition, it was unclear whether attempt to commit Hobbs Act robbery or conspiracy to commit Hobbs Act robbery satisfied the "elements clause" of § 924(c)(3)(A). [ECF No. 16, pp. 7-10]. The "elements clause" defines a crime of violence under § 924(c) as an offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another. . . ." 18 U.S.C.

§ 924(c)(3)(A).

Moreover, at the time of Perez's petition, the Eleventh Circuit had not yet decided whether § 924(c)'s residual clause was unconstitutionally vague after *Johnson*. Thus, because it was unclear whether his predicate offenses satisfied the elements clause, the Eleventh Circuit found that Perez made a *prima facie* showing that his conviction *might* implicate the residual clause of § 924(c) and *Johnson*. [ECF No. 16, pp. 7-10].

However, the Eleventh Circuit has since held that "attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s [elements clause] because that clause expressly includes 'attempted use' of force." *United States v. St. Hubert*, 909 F.3d 335, 351, 354 (11th Cir. 2018) ("St. Hubert's predicate offense of attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force [elements] clause . . . and we thus affirm St. Hubert's second § 924(c) firearm conviction.").

The question of whether a conviction for conspiracy to commit a Hobbs Act robbery meets § 924(c)'s elements clause remains unsettled. *See McKnight v. United States*, 753 F. App'x 873, 874 n.1 (11th Cir. 2019) (declining to decide question of whether conviction for conspiracy to commit Hobbs Act robbery satisfied § 924(c)'s elements clause because the movant's conviction satisfied the residual clause).

But courts considering § 924(c) convictions for conspiracy and attempted Hobbs Act robbery have held that only one of the defendant's predicate offenses need to qualify as a crime of violence under § 924(c). *See, e.g., Myrthil v. United States*, 733 F. App'x 480,

482-83 (11th Cir. 2018) (finding that movant's conviction for attempted Hobbs Act robbery met the elements clause of § 924(c), and thus the court "need not consider whether Mrythil's conviction for conspiracy to commit Hobbs Act robbery is a 'crime of violence' under § 924(c)(A) or (B), because a conviction and sentence under § 924(c) requires only one companion conviction not two."); *Gomez v. United States of America*, U.S. District Court for the Southern District of Florida, Case No. 16-CV-22057-WJZ, ECF No. 37, pp. 10-12 (citing to *Myrthil* and stating, "just one of the drug trafficking crimes and the attempt to commit Hobbs Act robbery were sufficient to support the § 924(c) conviction"); *Duncan v. United States of America*, U.S. District Court for the Southern District of Florida, Case No. 16-CV-22408-JAL, ECF No. 27, p. 7 (finding that predicate offense of attempted Hobbs Act robbery met "elements clause" of § 924(c), where conspiracy charge was also a predicate offense, and thus movant not entitled to habeas relief).

Thus, because at least one of Perez's predicate offenses, attempted Hobbs Act robbery, constitutes a crime of violence under § 924(c)'s elements clause, the Undersigned could conceivably end the inquiry there. To be certain, however, the Undersigned will also consider whether Perez's conspiracy conviction satisfies the residual clause of § 924(c).

The residual clause provides that an offense meets the definition of a crime of violence under § 924(c) if the crime, "by its nature, involves a substantial risk that physical

force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). As discussed above, the Eleventh Circuit has held that § 924(c)'s residual clause is not unconstitutionally vague if interpreted to embody a conduct-based approach, which focuses on the "real-world facts of the defendant's offense." *Ovalles II*, 905 F.3d at 1233, 1253.

The real-world facts underlying Perez's conviction for conspiracy to commit Hobbs Act robbery support the conclusion that this conviction is a crime of violence under the residual clause. As alleged in the indictment, Perez's § 924(c) conviction was predicated on two offenses -- conspiracy to commit Hobbs Act robbery, "in that the defendants did plan to take cocaine from individuals they believed to be engaged in narcotics trafficking ***by means of actual and threatened force, violence and fear of injury to said persons***"; and attempted Hobbs Act robbery in that the defendants attempted to "take cocaine from individuals they believed to be engaged in narcotics trafficking ***by means of actual and threatened force, violence and fear of injury to said persons***." [CRDE No. 176 (emphasis added)]. The jury found Perez guilty of both counts. [CRDE No. 525].

As detailed by the Eleventh Circuit during Perez's direct criminal appeal, Perez and his coconspirators planned to steal 20-30 kilograms of cocaine from armed guards at a stash house. *Perez*, 661 F.3d at 574–76. "Perez and Del Monte embraced the proposal, adding that although more than three intruders would be needed, they 'had the people for that.'" *Id.* at 575. And during preparations, "Perez then called an unidentified male to

locate firearms." *Id.* On the day of the planned robbery, the coconspirators met at Perez's

apartment to discuss the heist. *Id.*

> In particular, the conspirators discussed the need to be armed given the
> near certainty that the show of deadly force would be necessary to succeed.
> . . . Perez asked Fernandez if Davila would supply the necessary weapons.
> Fernandez replied that Davila had "four weapons and a shotgun,"
> including a machine gun, and stated that they would need five hoods and
> plastic handcuffs. ***Perez noted that the machine gun would intimidate the***
> ***guards***. . . .

> ***Perez and his nephew placed a long firearm and a handgun into a black bag***.
> Davila, Fernandez, and the CI carried this bag from the apartment and
> placed it in the rear of the CI's car. Davila took additional firearms from his
> car and put them in the CI's vehicle.

> At this point, Salgado, Perez, Del Monte, Fernandez, Davila, and Pereier
> entered Perez's SUV and began following the CI to the pre-robbery
> rendezvous with "Juan." Throughout the 30 to 40–minute journey, Del
> Monte, Fernandez, and Davila phoned the CI to discuss the plan. Task force
> enforcement officers stopped the robbery crew's car just short of its
> destination under the pretext of controlling traffic around a vehicular
> accident. The officers searched the car and found Del Monte in possession
> of five knit stocking caps and pepper spray; Perez and Davila both
> possessed knives. A search of the CI's vehicle uncovered five loaded
> firearms: a .12 gauge shotgun, an AK–47 rifle, a .38 caliber revolver, a .9mm
> Berretta, and a .44 magnum.

*Perez*, 661 F.3d at 575–76 (emphasis added).

The Eleventh Circuit also pointed out the "dangerous nature of the operation:

robbing armed guards of twenty to thirty kilograms of cocaine." The Court stated:

> As they planned to overcome the armed guards with force, Salgado told
> Del Monte and Perez that they would need additional people. . . . These
> projections of violence were sufficient for the jury to reasonably conclude
> that the coconspirators intended that the guns play a central role in carrying
> out the criminal venture; as Salgado testified at trial, "[i]t's assumed if you

are going to rob people who are armed, you have to take weapons."

> This general awareness of the need for guns buttresses the evidence presented concerning the events that transpired within Perez's "very small" apartment. Fernandez, with Del Monte present, discussed the specific guns that Davila would provide for the robbery, including an AK–47 machine gun. Martinez also testified that guns were displayed at the time the group began to "mobilize[ ]" for the robbery. Moreover, the tape recording of the proceedings inside the apartment, as well as Salgado's testimony, revealed that the group consciously waited to depart for the robbery until they received word that the guns had been placed in the CI's car for transportation to the robbery site.

*Perez*, 661 F.3d at 577–78.

The Presentence Investigation (PSI) Report reiterates these facts and discusses Perez's coconspirator's confession that their plan was to enter the stash house, tie up the occupants, and steal the cocaine. PSI ¶ 24. The PSI notes that Perez stated during preparations that the group needed long tie straps to commit the robbery. PSI ¶ 18. Law enforcement videotaped Perez and another coconspirator returning to Perez's residence with tie straps. PSI ¶ 18. Perez did not object to these paragraphs in the PSI. *See* Addendum to PSI (noting that Perez objected to paragraphs 27 and 32-34).

"Post-*Ovalles*, Eleventh Circuit case law supports that a conspiracy conviction can satisfy the residual clause where the conviction reflects the defendant's awareness that, if needed, a firearm may be used to carry out the substantive offense." *Mann v. United States*, No. 16-cv-22605-UU, 2019 WL 323921, at *1-2 (S.D. Fla. Jan. 25, 2019).

Here, Perez and the coconspirators planned to use firearms, including an AK-47, to overtake armed guards at the stash house and to restrain them with tie-straps; and

Perez took steps to secure a firearm and the tie-straps. Perez and the coconspirators were apprehended on their way to the fictional stash house with "five loaded firearms: a .12 gauge shotgun, an AK–47 rifle, a .38 caliber revolver, a .9mm Beretta, and a .44 magnum." *Perez*, 661 F.3d at 575–76. It is clear that Perez was aware that multiple firearms were necessary to restrain the armed guards at the stash house and would be brandished during the robbery.

Factually analogous offenses have been found to involve a substantial risk that physical force would be used and satisfy the residual clause of § 924(c). *See Mann*, 2019 WL 323921 at *1-2 (collecting cases). For example, in *McKnight*, the Eleventh Circuit found that a scheme to rob a stash house satisfied § 924(c)'s residual clause, stating:

> "Mr. McKnight agreed to steal 15 to 20 kilograms of cocaine from a stash house [belonging to a Mexican drug cartel] by using force through firearms and ammunition." Mr. McKnight's PSI similarly recounted the facts surrounding his conviction, which Mr. McKnight did not dispute. Under a conduct-based approach, Mr. McKnight's conspiracy to commit a Hobbs Act robbery involved a substantial risk that physical force may be used against a person or property. Thus, his conviction constituted a crime of violence under § 924(c)'s residual clause.

*McKnight*, 753 F. App'x at 875.

Similarly here, the Undersigned finds that the facts underlying Perez's conviction for conspiracy to commit Hobbs Act Robbery constitutes a crime of violence under § 924(c)'s residual clause.

### c. Certificate of Appealability

Even though the Undersigned finds that Perez is not entitled to relief under § 2255, the Undersigned recommends that the District Court issue a certificate of appealability. "Section 2253(c) bars appeals from 'final order[s]' in § 2255 proceedings '[u]nless a circuit justice or judge issues a certificate of appealability.'" *Jackson v. United States*, 875 F.3d 1089, 1090 (11th Cir. 2017) (quoting 28 U.S.C. § 2253(c)(2)).

Section 2253(c) permits the issuance of a certificate of appealability only where a petitioner has made a "substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citation omitted). This requires the petitioner to, in turn, show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (internal quotations omitted).

Here, the grant of certiorari by the Supreme Court in *Davis v. United States*, Case No. 18-431, which will resolve the issue of whether § 924(c)'s residual clause is unconstitutionally vague, was based on a significant Circuit split and shows that reasonable jurists could debate the merits of Perez's claim. And specifically, reasonable jurists could debate whether conspiracy to commit Hobbs Act robbery is a crime of violence under § 924(c) after *Johnson*. *See In re Pinder*, 824 F.3d 977, 979 n.1 (11th Cir. 2016) ("At least two district courts [one in California and one in Maryland] have held that

conspiracy to commit Hobbs Act robbery is not a "crime of violence" after *Johnson*.").

Therefore, Perez should be granted a certificate of appealability so that he may preserve his arguments at the next level, on the following issue: Whether Perez's conviction under 28 U.S.C. § 924(c), predicated on attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery, is unaffected by the ruling in *Johnson*.

## III.    Conclusion

Upon careful consideration, the Undersigned **respectfully recommends** that the District Court **deny** Perez's habeas motion but **grant** the issuance of a certificate of appealability.

## Objections

The parties will have 14 days from the date of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v.*

*Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, May 3, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to:**</u>
The Honorable Cecilia M. Altonaga
Counsel of Record