**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-22668-CIV-ALTONAGA/Goodman**

**RENE GONZALEZ PEREZ**,

    Movant,

v.

**UNITED STATES OF AMERICA**,

    Respondent.

_____ /

## **ORDER**

Movant, Rene Gonzalez Perez filed a Motion Under 28 U.S.C. [Section] 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1] on June 26, 2016. Following the resolution of several procedural obstacles, the case was referred to Magistrate Judge Jonathan Goodman for a report and recommendation. (*See* Oct. 13, 2017 Order [ECF No. 19]). On May 3, 2019, Judge Goodman filed his Report and Recommendations Recommending Denial of [Section] 2255 Motion [ECF No. 25]. Movant filed Objections [ECF No. 26]. After a stay pending appeals addressing related legal questions (*see* May 22, 20219 Order [ECF No. 27] 1–2), the parties filed supplemental briefing[1] at the Court's request (*see* July 2, 2019 Order [ECF No. 29]). For the reasons expressed in this Order, and given law post-dating the Report's issuance, the Report is not affirmed, and the Motion is granted.

---

[1] Respondent filed a Memorandum of Law [ECF No. 30], and Movant filed a Memorandum of Law [ECF No. 31]. Thereafter, the parties filed no fewer than five additional memoranda of law. (*See* [ECF Nos. 41, 43–46]). The Local Rules require leave of Court prior to filing such additional memoranda. *See* S.D. Fla. L.R. 7.1(c)(1). Nevertheless, the Court touches on the parties' supplemental arguments and authorities where appropriate.

## I. BACKGROUND

**A.    The Conspiracy and Attempted Robberies**

This case arises from Movant and his co-defendants' conspiracy and attempt to rob a check-cashing store and stash house. *See United States v. Perez*, 661 F.3d 568, 572–73 (11th Cir. 2011). In deciding the direct appeal of Movant's conviction, the Eleventh Circuit Court of Appeals described the salient facts of the case as follows:

> In late July 2007, a confidential informant (the "CI") for a joint state/federal task force discussed potential robbery targets with Onel Salgado, including a check-cashing store in Ft. Pierce and a fictional cocaine stash house in Miami. Salgado expressed interest in both ideas . . . .
>
>         . . . .
>
> . . . Salgado told Perez and Del Monte about the potential cocaine stash house robbery. The hold-up would be made possible by the cooperation of a disloyal drug courier "Juan," who was actually an undercover Miami–Dade detective. "Juan" would receive the location of the stash house after collecting his bimonthly delivery of twenty to thirty kilograms of cocaine from the Tamiami Airport. He would then convey this information to the CI, allowing Salgado and his coconspirators to steal the drugs from armed guards brought to the stash house from Mexico. Perez and Del Monte embraced the proposal, adding that although more than three intruders would be needed, they "had the people for that."
>
>         Preparations for the robbery moved quickly. On August 21, 2007, the CI, Salgado, and "Juan" met to discuss their progress. Salgado reported that Perez and Del Monte wanted to overpower and immobilize the stash house guards shortly after they learned the stash house's location. They would then relieve "Juan" of the cocaine upon his arrival. "Juan" agreed with the plan and advised Salgado that the next shipment would arrive two days later, on August 23, 2007. Immediately following this meeting, Salgado called Perez to inform him of the shipment's arrival. Perez stated that he would "call the guys" and subsequently contacted [] Fernandez and Davila. The next evening, Salgado called Perez to confirm that the cocaine would arrive the following afternoon. Perez then called an unidentified male to locate firearms for "work" the next day.
>
>         In the early afternoon of August 23rd, the day of the planned robbery, Salgado, Perez, Fernandez, Del Monte, and Pereier met at Perez's apartment to discuss the heist; though Davila was not present, he and Fernandez exchanged three phone calls during this time. Perez stressed the importance of completing the robbery that night, as the next cocaine shipment would not arrive for another twenty sorry adays. While the robbery crew all expressed their willingness to go forward,

> they also wished to meet "Juan" beforehand. Therefore, Salgado, Del Monte, and Fernandez left Perez's apartment, picked up the CI at a nearby restaurant, and returned.
>
> At Perez's apartment, the CI apologized for "Juan's" absence and recounted the robbery's details. In particular, the conspirators discussed the need to be armed given the near certainty that the show of deadly force would be necessary to succeed. For example, Fernandez described how the Mexican guards would "kill you" to protect the drugs. Perez asked Fernandez if Davila would supply the necessary weapons. Fernandez replied that Davila had "four weapons and a shotgun," including a machine gun, and stated that they would need five hoods and plastic handcuffs. Perez noted that the machine gun would intimidate the guards. Because the transportation of guns would increase their risk of detection, they decided that the firearms would be transported in a separate vehicle. If police stopped that vehicle, the other car would create a distraction to allow it to escape.
>
> After the CI stated that "Juan" would contact him within an hour, Fernandez and Davila exchanged two telephone calls; Davila arrived shortly thereafter. When the CI announced that he received "Juan's" call, Perez and his nephew placed a long firearm and a handgun into a black bag. Davila, Fernandez, and the CI carried this bag from the apartment and placed it in the rear of the CI's car. Davila took additional firearms from his car and put them in the CI's vehicle.
>
> At this point, Salgado, Perez, Del Monte, Fernandez, Davila, and Pereier entered Perez's [Honda Ridgeline] SUV and began following the CI to the pre-robbery rendezvous with "Juan." Throughout the 30 to 40–minute journey, Del Monte, Fernandez, and Davila phoned the CI to discuss the plan. Task force enforcement officers stopped the robbery crew's car just short of its destination under the pretext of controlling traffic around a vehicular accident. The officers searched the car and found Del Monte in possession of five knit stocking caps and pepper spray; Perez and Davila both possessed knives. A search of the CI's vehicle uncovered five loaded firearms: a .12 gauge shotgun, an AK-47 rifle, a .38 caliber revolver, a .9mm Berretta, and a .44 magnum.

*Id.* at 574–76 (alterations added; footnote call number omitted).

**B.    Trial and Conviction**

In 2008, a federal grand jury returned a 7-count Superseding Indictment charging Movant with: conspiracy to commit Hobbs Act robbery of the check-cashing store, in violation of 18 U.S.C. section 1951(a) (Count 1); attempted Hobbs Act robbery of the check-cashing store, in violation of 18 U.S.C. section 1951(a) (Count 2); conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. section 846 (Count 3); attempt to possess with intent to distribute

3

cocaine, in violation of 21 U.S.C. sections 846 and 2 (Count 4); conspiracy to commit Hobbs Act robbery of the stash house, in violation of 18 U.S.C. section 1951(a) (Count 5); attempted Hobbs Act robbery of the stash house, in violation of 18 U.S.C. sections 2 and 1951(a) (Count 6); and carrying and possessing a firearm during and in relation to a crime of violence and a drug-trafficking crime, as set forth in Counts 3 through 6, in violation of 18 U.S.C. sections 924(c)(1)(A) and 2 (Count 7). (*See* Superseding Indictment [CR ECF No. 176][2] 1–7). Movant proceeded to a jury trial. (*See* R. & R. 5–6).

*Closing Arguments.* At trial, the prosecutor, in closing, emphasized the differences between Count 5 (conspiracy) and Count 6 (attempted robbery). (*See* Mar. 20, 2009 Tr. Jury Trial ("Closing Arg. Tr.") [CR ECF No. 684] 48:5–23). Specifically, the prosecutor pointed out that while conspiracy involves planning and scheming, attempted robbery requires a substantial step to committing the robbery: "And what was their substantial step? Their substantial step was getting into that Honda Ridgeline[.]" (*Id.* 48:19–21 (alteration added)).

In describing the necessary elements of Count 7, the prosecutor explained: "[T]hese defendants are guilty of Counts 3 through 6, the drug trafficking crimes and the crimes of violence. So[,] the only other element left to prove is that these defendants either carried or possessed a firearm in relation to committing these crimes and [in] furtherance of committing those crimes." (*Id.* 50:16–21 (alterations added)). After educating the jury regarding the differences between actual and constructive possession, the prosecutor methodically recounted the facts showing each defendant's possession of a firearm during the charged crimes. (*See id.* 52:5–54:11). For Movant in particular, the prosecutor identified only actual possession of a firearm: "On August 23, 2007,

---

[2] References to docket entries in Movant's criminal case, Case No. 07-cr-20714, are denoted as "CR ECF No."

4

[Movant] was in actual possession of that SKS rifle when he put it into that black bag." (*Id.* 52:16–18 (alteration added)).

***Jury Instructions, Conviction, and Sentence.*** A jury found Movant guilty of Counts 1, 5, 6, and 7; and acquitted him of Counts 2, 3, and 4. (*See* R. & R. 6). Regarding Count 7, the jury instructions stated the underlying predicate offense could be "a drug trafficking offense or crime of violence charged in Count 3, 4, 5 or 6 of the superseding indictment[.]" (Ct.'s Instr. to Jury ("Jury Instr.") [CR ECF No. 533] 9 (alteration added)). The jury's general verdict did not specify which of Counts 5 or 6 — conspiracy to commit Hobbs Act robbery or attempted Hobbs Act robbery, respectively — was the basis for convicting Movant of Count 7. (*See generally* Verdict [CR ECF No. 525]).

The Court sentenced Movant to a total of 126 months' imprisonment, consisting of concurrent terms of 66 months' imprisonment on Counts 1, 5, and 6; and a consecutive term of 60 months' imprisonment on Count 7. (*See* 2d Am. J. [CR ECF No. 766] 2; *see also* R. & R. 6–7, 7 n.3). The Court also sentenced Movant to supervised release: three years for each of Counts 1, 5, and 6; and five years for Count 7, with all terms running concurrently. (*See* 2d Am. J. 3).

**C.     Appeals and First Motion to Vacate**

In 2011, the Eleventh Circuit affirmed Movant's conviction on direct appeal but remanded for resentencing. *See generally Perez*, 661 F.3d 568. After two sentencing hearings and two more appeals, the Eleventh Circuit affirmed Movant's sentence in 2014. (*See* R. & R. 6–7, 7 n.3). Movant filed his first 28 U.S.C. section 2255 motion to vacate his sentence on December 15, 2014. (*See id.* 7). The Court denied this initial motion. (*See id.*). Movant did not raise — in any of the prior proceedings — arguments relating to the unconstitutional vagueness of any statutes under which he was convicted. *See Perez v. United States*, No. 14-24721-Civ, 2015 WL 13402548,

5

at *4–5 (S.D. Fla. Nov. 17, 2015) (detailing the arguments made in the proceedings), *report and recommendation adopted*, 2016 WL 9115986 (S.D. Fla. Feb. 1, 2016).

**D.** **Second Motion to Vacate following *Johnson v. United States***

In 2016, Movant applied to the Eleventh Circuit for leave to file a second or successive motion to vacate under 28 U.S.C. section 2255, based upon the new rule of constitutional law announced in *Johnson v. United States*, 576 U.S. 591 (2015). (*See In re Perez*, Order Granting Leave to File Successive Mot. [ECF No. 16] 2–3).[3] In *Johnson*, the United States Supreme Court struck down a portion of the Armed Career Criminal Act — 18 U.S.C. section 924(e)(2)(B)(ii) — as unconstitutionally vague. *See* 576 U.S. at 597. Movant sought to collaterally attack his section 924(c) conviction (Count 7) using the same rationale found persuasive in *Johnson*. (*See In re Perez* 3). The Eleventh Circuit granted Movant's application, acknowledging the possibility the *Johnson* rule may render the section 924(c) conviction unconstitutional. (*See id.* 7–8).

As noted, the Court referred the Motion to Magistrate Judge Goodman for a report and recommendation. (*See generally* Oct. 13, 2017 Order). At Movant's suggestion, the Court deferred deciding the present section 2255 Motion pending the outcome of several related cases before the Supreme Court and the Eleventh Circuit. (*See* Movant's Reply to Gov't's Resp. to § 2255 Mot. [ECF No. 21] ¶¶ 7–8).

The Report issued on May 3, 2019 after the resolution of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *Ovalles v. United States*, 905 F.3d 1231 (11th Cir. 2018). (*See generally* R. & R.). The Report recommended denying Movant's Motion, concluding the Eleventh Circuit's *Ovalles* holding was determinative — the *Johnson* rule did not apply to section 924(c). (*See id.* 10 (citing *Ovalles*, 905 F.3d at 1233, 1253; other citations omitted)). Movant's objections

---

[3] The Court relies on the header pagination generated by the CM/ECF system.

to the Report presciently argued that *Ovalles* was wrongly decided and the Eleventh Circuit's holding would soon be rejected by the Supreme Court. (*See* Objs. ¶ 1 (citing *Ovalles*, 905 F.3d at 1253; other citations omitted)).

Indeed, less than two months later in *Davis* the Supreme Court extended its *Johnson* void-for-vagueness holding to 18 U.S.C. section 924(c), abrogating *Ovalles*. *See United States v. Davis*, 139 S. Ct. 2319, 2324–26, 2325 n.2, 2326 n.4, 2336 (2019). Section 924(c) criminalizes using a firearm "during and in relation to any crime of violence or drug trafficking crime[.]" 18 U.S.C. § 924(c)(1)(A) (alteration added). "Crime of violence" is defined by two clauses. *See id.* § 924(c)(3). First, the "elements clause" defines a crime of violence as a felony having "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" *Id.* § 924(c)(3)(A) (alteration added). Second, the "residual clause" includes in the crime of violence definition any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). The Supreme Court determined section 924(c)'s residual clause was unconstitutionally vague. *See Davis*, 139 S. Ct. at 2336.

The Court instructed the parties to file supplemental briefing regarding *Davis*'s effect on the present Motion. (*See* July 2, 2019 Order). Movant pressed his objections to the Report given post-*Davis* legal evolutions and asked that the Court grant the Motion. (*See* Movant's Mem. Law 6). Respondent — rather than suggest the Court adopt the Report — contended the Motion should be denied, advancing several arguments. (*See generally* Resp't's Mem. Law).

## II. DISCUSSION

### A. The Report and Recommendations

As noted, the Report recommended denying the Motion, concluding the Motion was

7

procedurally barred and failed on the merits. (*See* R. & R. 8). The well-reasoned Report relied on three premises: (1) the *Johnson* rule of constitutional law does not relate to Movant's section 924(c) conviction; (2) the section 924(c) conviction based on conspiracy to commit Hobbs Act robbery is a valid "crime of violence" under section 924(c)'s residual clause; and (3) Movant's section 924(c) conviction based on attempted Hobbs Act robbery is a valid "crime of violence" under section 924(c)'s elements clause. (*See id.* 10–19 (citations omitted)).

The first two legs of the Report's tripartite reasoning are no longer sound given legal developments after the Report's issuance. First, the Supreme Court extended its rationale in *Johnson* to section 924(c)'s residual clause, holding the residual clause was void for vagueness and unconstitutional. *See Davis*, 139 S. Ct. at 2324–26, 2336. Moreover, the Eleventh Circuit determined the *Davis* rule was retroactively applicable to cases on collateral review, such as the present Motion. *See In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019). Finally, considering *Davis*'s rejection of the residual clause, the Eleventh Circuit held conspiracy to commit Hobbs Act robbery is not a "crime of violence" and thus not a valid predicate offense for section 924(c) convictions. *See Brown v. United States*, 942 F.3d 1069, 1075–76 (11th Cir. 2019) (citations omitted).

Given the shifting legal landscape since the Report and Movant's objections, the Court has conducted a *de novo* review of the Motion, addressing the more up-to-date supplemental arguments and authorities presented by Movant and Respondent. *See* Fed. R. Civ. P. 72(b)(3).

**B.      Reviewing the Section 2255 Motion** *de novo*

Movant requests the Court vacate his Count 7 conviction and its 5-year consecutive sentence (and period of supervised release which he is currently serving) because the conviction likely rested on section 924(c)'s now-voided residual clause and is thus unconstitutional under

*Davis*. (*See* Mot. 29; Movant's Mem. Law 1–4 (citing *Davis*, 139 S. Ct. at 2336; other citations omitted)). Respondent contends that (1) Movant procedurally defaulted his claim; (2) the Motion fails on the merits because the jury convicted Movant on a valid predicate "crime of violence," which is sufficient to sustain the section 924(c) conviction; and (3) even assuming Movant establishes a constitutional error, that error was harmless.[4] (*See* Resp't's Mem. Law 4–11; Resp't's Notice Suppl. Auth. [ECF No. 43] 2–3). The Court considers these arguments below.

    1.    ***Cause and Prejudice Overcome Movant's Procedural Default***

Respondent argues Movant's claim is barred by the procedural default rule because Movant failed to challenge section 924(c)'s residual clause on direct appeal. (*See id.* 5–8). Movant states any procedural default must be excused because the basis of his legal challenge is a "new retroactive rule of constitutional law."[5] (Movant's Mem. Law 3).

---

[4] Respondent also argued Movant's Motion is untimely, but this argument fails in the face of recent controlling authority. Defendants bringing section 2255 motions to vacate based on a constitutional right newly recognized by the Supreme Court, when the new right is made retroactively applicable to cases on collateral review, may file such motions within a year of the Supreme Court's initial recognition of the new right. *See* 28 U.S.C. § 2255(f)(3). On July 17, 2019, Respondent argued the Motion was untimely because *Davis* had yet to be made retroactively applicable to cases on collateral review. (*See* Resp't's Mem. Law 5 (citations omitted)). Respondent conceded Movant's Motion would be timely if *Davis* was given retroactive effect to cases on collateral review. (*See id.*).

Six days after Respondent filed its Memorandum of Law, the Eleventh Circuit concluded "*Davis* has been made retroactively applicable to criminal cases that became final before *Davis* was announced." *Hammoud*, 931 F.3d at 1039 (quotation marks and citation omitted). Given this change in the law, the Court concludes the Motion is timely.

[5] Additionally, Movant argues the fundamental miscarriage of justice exception — also known as "actual innocence" — excuses his procedural default. (*See* Movant's Mem. Law 3 (citing *Bousley v. United States*, 523 U.S. 614, 624 (1998); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013))). The Eleventh Circuit has found that for the innocence exception to apply, a movant "must show that he is factually innocent of the conduct or underlying crime that serves as the predicate for the [challenged conviction]." *McKay v. United States*, 657 F.3d 1190, 1199 (11th Cir. 2011) (alteration added; emphasis omitted); *see id.* (determining the innocence exception does not apply to the movant's claim he was erroneously sentenced as a career offender under the Sentencing Guidelines because a prior conviction was not a "crime of violence").

Here, Movant has not shown he is factually innocent of the conduct or underlying crimes, so he cannot rely on the actual innocence exception to excuse his procedural default. *See Hill v. United States*,

9

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a [section] 2255 proceeding." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (alteration added; quotation marks and citation omitted). "But the [procedural-default] bar is not absolute." *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (alteration added). A defendant "can overcome it if he establishes cause and prejudice." *Id.* (citation omitted).

*Cause.* "To show cause, a defendant must prove that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim previously." *Lynn v. United States*, 365 F.3d 1225, 1235 n.20 (11th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Cause exists "where a constitutional claim is so novel that its legal basis [was] not reasonably available to counsel[.]" *Reed v. Ross*, 468 U.S. 1, 16 (1984) (alterations added); *see also Bane*, 948 F.3d at 1296–97 ("The novelty of a claim may constitute cause for excusing the procedural default, but only when the claim is truly novel[.]" (alteration added; citing *Reed*, 468 U.S. at 16; other citation omitted)). Constitutional claims based on the Supreme Court overruling prior precedent are generally considered truly novel and not reasonably available to counsel. *See Reed*, 468 U.S. at 17 (explaining that "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a [] court to adopt the position that this Court has ultimately adopted" if that position overrides *stare decisis* (alteration added)).

Movant lacked a reasonable basis for challenging section 924(c)'s residual clause until, at the earliest, the Supreme Court's 2015 decision in *Johnson* — years after Movant's direct appeal.

---

569 F. App'x 646, 648 (11th Cir. 2014) (classifying as "legal innocence" movant's argument that he was innocent of an offense because a retroactive legal rule invalidated a predicate used for convicting on that offense and determining legal innocence was insufficient to excuse the movant's default).

10

*See generally* 576 U.S. 591.  In *Johnson*, the Supreme Court explicitly overruled *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011), when it held section 924(e)'s residual clause was unconstitutionally vague.  *See* 576 U.S. at 606.  The Supreme Court then extended this new rule of constitutional law to section 924(c)'s residual clause in *Davis*.  *See* 139 S. Ct. at 2325–27.

Because Movant lacked a reasonable basis at the time of his direct appeal to challenge section 924(c)'s residual clause, he has shown cause.  *See, e.g.*, *Watson v. United States*, No. 04-cr-0591, 2020 U.S. Dist. LEXIS 167014, at *5–6 (N.D. Ga. Mar. 9, 2020) (finding cause for failing to challenge section 924(c)'s residual clause prior to *Johnson* and *Davis*); *Williams v. United States*, No. 03-cr-0155, 2020 U.S. Dist. LEXIS 167013, at *7–8 (N.D. Ga. Apr. 1, 2020) (same).

***Prejudice.***  Prejudice exists where the alleged error "worked to [a defendant's] *actual* and substantial disadvantage[.]"  *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997) (alterations added; emphasis in original; quotation marks omitted; quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  As the Supreme Court has explained, a defendant must demonstrate a "reasonable probability that the result of the [proceedings] would have been different" absent the alleged error.  *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (alteration added; quotation marks omitted).

Movant's allegedly unlawful section 924(c) conviction added 5 years to his term of imprisonment and additional time under supervision.  (*See* 2d Am. J. 2; Mot. 28–29). Undoubtedly, this constitutes prejudice.  *See Watson*, No. 04-cr-00591, at *6 (finding prejudice where the movant "received a prison sentence longer than the one he would have received" absent the alleged error); *Williams*, No. 03-cr-00155, at *8–9 (same); *cf. In re Jones*, 830 F.3d 1295, 1303 (11th Cir. 2016) (Rosenbaum and Jill Pryor, JJ., concurring) ("As for manifest injustice, the

*Johnson* circumstances satisfy it as well. In the context of *Johnson* [], an error means that an inmate may potentially sit in prison for years beyond his constitutionally authorized sentence." (alteration added)).

Movant was prejudiced by the alleged error. Accordingly, the Court finds Movant's claim is not barred by the procedural default rule and turns to the Motion's merits.

### 2. *Movant Shows the Jury Likely Convicted Him Based on an Invalid "Crime of Violence"*

Movant challenges his Count 7 conviction and sentence for violating 18 U.S.C. section 924(c), which criminalizes using or carrying a firearm during and in relation to a "crime of violence." As mentioned, *Davis* rendered void for vagueness "crimes of violence" relying on the residual clause, section 924(c)(3)(B). *Davis*, 139 S. Ct. at 2336. Movant argues the jury instructions permitted the jury to convict him of a crime of violence defined by the unconstitutional residual clause — Count 5, conspiracy to commit Hobbs Act robbery; the general verdict does not specify on which crime of violence the jury convicted Movant under section 924(c); and the record establishes the jury likely convicted Movant *solely* based on Count 5. (*See* Movant's Mem. Law 3–4; Movant's Notice Suppl. Auth. [ECF No. 41] 2). Respondent only disputes this final point, arguing the jury convicted Movant based on *both* Counts 5 and 6 — the latter being attempted Hobbs Act robbery. (*See* Resp't's Notice Suppl. Auth. 3–4).

Under 28 U.S.C. section 2255, federal prisoners may seek relief from the court that imposed their sentence if: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a) (alteration added). It is the movant's burden

to show — by a preponderance of the evidence — that he is entitled to relief. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (citations omitted).

When a challenged conviction rests on a predicate crime, the jury was instructed it could convict based on one of several predicates, and one of the predicates is unconstitutional, then relief is warranted where the movant shows the jury more likely than not relied on the invalid predicate. *See In re Cannon*, 931 F.3d 1236, 1243 (11th Cir. 2019) (explaining the burden of proof when a movant is challenging a section 942(c) conviction based on several predicate crimes of violence, including the *Davis*-invalidated conspiracy to commit Hobbs Act robbery). Courts determining on which predicate offense a jury likely relied do so "by examining the jury instructions and the closing arguments made at trial and asking whether, under the circumstances, the jury could only have [relied on an invalid predicate]." *Adams v. Wainwright*, 764 F.2d 1356, 1362 (11th Cir. 1985) (alteration added); *see also Donjoie v. United States*, 806 F. App'x 934, 934–35 (11th Cir. 2020) (relying on jury instructions in determining the jury did not convict based on an invalid conspiracy to commit Hobbs Act robbery predicate).

Movant contends "it is much more likely that the jury relied on the [invalid] conspiracy conviction [(Count 5)], rather than the [valid] attempt conduct itself [(Count 6)], as the basis for the [section] 924(c) conviction." (Movant's Mem. Law 4 (alterations added)). As support, Movant argues the evidence presented to the jury only showed his possession of a firearm during the conspiracy — not during the attempt — and that this basis for the section 924(c) conviction was the "predominant focus" of the prosecution's argument at trial. (Movant's Notice Suppl. Auth. 2; *see also* Movant's Mem. Law 4).

Respondent insists "[t]he only logical interpretation of the jury verdict, in light of the evidence submitted at trial, is that the firearms were possessed in furtherance of *both* the conspiracy

13

and attempted robbery count." (Resp't's Notice Suppl. Auth. 3–4 (alteration added; emphasis in original)). Respondent argues Movant constructively possessed firearms — firearms physically possessed by his co-conspirators — during the attempted robbery; the evidence permitted the jury to convict Movant on constructive possession; the jury was instructed on constructive possession; and thus the jury likely based Movant's section 924(c) conviction on *both* (Count 5) actual possession during the conspiracy and (Count 6) constructive possession during the attempt — because the predicate conduct was necessarily intertwined.[6] (*See* Resp't's Reply Movant's Resp. Suppl. Auth. [ECF No. 45] 1–3 (citing *Gomez v. United States*, No. 16-22057-Cv, 2020 U.S. Dist. LEXIS 106161, at *23–25 (S.D. Fla. June 15, 2020), *report and recommendation adopted* [ECF No. 47] (S.D. Fla. July 28, 2020); and *Garrison v. United States*, No. 16-61477-Civ, 2020 U.S. Dist. LEXIS 117008 (S.D. Fla. July 1, 2020))).

The Court agrees with Movant. The prosecutor, in closing arguments regarding Count 7, emphasized Movant's *personal, actual possession of a firearm* when Movant placed an SKS rifle into a black bag in preparation for the planned robbery of the stash house. (*See* Closing Arg. Tr. 52:16–18). Movant then gave this weapons bag to the CI, *prior* to Movant getting into an SUV to drive to the planned robbery. *See Perez*, 661 F.3d at 575–76. The prosecutor argued to the jury that Movant's act of entering the SUV was the substantial step required for the Count 6 attempt offense. (*See* Closing Arg. Tr. 48:19–21). Although the jury instructions permitted the jury to convict on Count 7 — for using a firearm during a crime of violence — based on the (invalid) conspiracy or (valid) attempt offense (*see* Jury Instrs. 9), it is *more likely* the jury convicted Movant

---

[6] Respondent also contends Movant is guilty under "aiding, abetting and agency principles covered by 18 U.S.C. [section] 2[.]" (Resp't's Reply Movant's Resp. Suppl. Auth. [ECF No. 45] 3 (alterations added)). This argument fails for the same reasons as Respondent's constructive possession theory, as described *infra*. *See United States v. Edwards*, 166 F.3d 1362, 1364 n.3 (11th Cir. 1999) (noting the defendant's conviction could not be sustained under an aiding and abetting theory because the purported principal, a government agent, never intended to complete the substantive crime).

on Count 7 based on the available evidence and as summarized by the prosecution at closing: Movant possessed the weapon while *conspiring* to commit Hobbs Act robbery, but *not during the attempt*. *See Adams*, 764 F.2d at 1362–63 (affirming district court's determination of which ground a jury verdict rested by examining closing arguments and jury instructions); *see also United States v. von NotHaus*, No. 09CR27, 2014 WL 5817559, at *4 (W.D.N.C. Nov. 10, 2014) ("The [general] jury verdict reflects that the fact finders accepted the Government's evidence and theory." (alteration added; footnote call number omitted)); *Acevedo v. Adams*, No. cv 09-6505, 2011 WL 837891, at *10 (C.D. Cal. Jan. 11, 2011) ("The [guilty] verdicts [] reflect that the jury accepted the prosecution's theory and rejected the defense theory[.] (alterations added)), *report and recommendation adopted*, 2011 WL 836672 (C.D. Cal. Feb. 28, 2011).

Moreover, Respondent's constructive possession argument is foreclosed by *Edwards*, 166 F.3d 1362. In *Edwards*, the Government argued the defendant constructively possessed crack cocaine that was physically possessed by a narcotics agent. *See id.* at 1364. The Eleventh Circuit held this was insufficient to show constructive possession, which requires some form of control — control a criminal defendant does not have over a government agent. *See id.* This rationale extends to government informants whose role is to frustrate substantive crimes rather than complete them. *See United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989) ("[I]t is legally impossible to conspire with a government agent or informant who actually aims to frustrate the conspiracy." (alteration added)).

Here, Movant could not have — as a matter of law — constructively possessed the weapons which were in the CI's physical possession during the attempted robbery. *See Perez*, 661 F.3d at 575–76. And Respondent does not point to any part of the record indicating this specific argument was even presented to the jury, nor could the undersigned locate such upon review.

15

Movant has met his burden in showing the jury likely relied *only* on conspiracy to commit Hobbs Act robbery (Count 5) in convicting him under section 924(c) (Count 7). Conspiracy to commit Hobbs Act robbery is not a valid section 924(c) "crime of violence," and convictions based solely on such a conspiracy "must be vacated." *Brown*, 942 F.3d at 1075 (citation omitted; vacating district court's denial of a movant's section 2255 motion, and summarily granting the motion, where the challenged conviction was based solely on conspiracy to commit Hobbs Act robbery).

Respondent's argument that this constitutional error was harmless assumes the jury must have convicted on both Count 5 and Count 6 because the predicate conduct was intertwined, firearms were involved during both predicate offenses, and the valid Count 6 predicate is sufficient to sustain the conviction. (*See* Resp't's Notice Suppl. Auth. 2–4 (citing *Hedgpeth v. Pulido*, 555 U.S. 57, 60–62 (2008), and *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); other citations omitted)). This argument fails, however, as the jury likely convicted solely on the invalid predicate, the Count 5 conspiracy to commit Hobbs Act robbery — for reasons already discussed.

Movant is thus entitled to his requested relief.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendations **[ECF No. 25]** are **not adopted**.

2. Movant, Rene Gonzalez Perez's Motion Under 28 U.S.C. [Section] 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody **[ECF No. 1]** is **GRANTED**.

3. An amended judgment will be entered in the criminal case, vacating the sentence on Count 7.

4. A judgment shall issue by separate order. The Clerk of Court is directed to **CLOSE** this case, and all pending motions are **DENIED as moot**.

CASE NO. 16-22668-CIV-ALTONAGA/Goodman

**DONE AND ORDERED** in Miami, Florida, this 23rd day of September, 2020.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record